UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10683-RWZ

STACY THOMPSON

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

September 18, 2017

ZOBEL, S.D.J.

Plaintiff Stacy Thompson appeals from a final decision by the Acting Commissioner of Social Security ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that denied her application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI"). Plaintiff contends that the ALJ erred by: (1) rejecting a critical portion of the vocational expert's ("VE") testimony; (2) failing to evaluate subjectively claimant's stress issue; and (3) finding that plaintiff had no physical limitations (Docket # 16). The Commissioner filed a cross-motion seeking an order to affirm the decision (Docket # 17).

Because I conclude that the ALJ did not commit such errors and his decision

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

was supported by substantial evidence, Plaintiff's Motion to Reverse (Docket # 16) is DENIED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 17) is ALLOWED.

**I.      Background**

Plaintiff filed an application for SSDI and SSI on March 19, 2013, alleging disability due to "anxiety-depression, PTSD-anxuety [sic] attacks, [and] isolation" beginning September 28, 2011.  R. at 185.[2]  Her claims were first denied on July 16, 2013, and again upon reconsideration later in October 2013.  Plaintiff filed a request for a hearing before an ALJ, and a hearing was held on September 12, 2014.  At the hearing, a medical expert and a VE testified.  Plaintiff's attorney, who was also present, waived plaintiff's right to appear at the hearing.[3]

**A.     Applicable Statutes and Regulations**

To receive SSDI or SSI benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. 1382c(a)(3)(A).[4]  The impairment or impairments must be "of such severity that [she] is

---

[2]     "R." refers to the Social Security administrative record, which was manually filed in this appeal at ECF No. 15.

[3]     Plaintiff contends that "her emotional condition was so severe that [she] could not bring herself to appear at her hearing," Docket # 16, at 2.  Plaintiff's attorney explained to the ALJ at the September 2014 hearing that "[w]e lost contact with [plaintiff] the last three, four weeks.  She doesn't return calls, hasn't responded to our increasingly urgent letters to get in touch. We don't know why she's not here."  R. at 27.

[4]     Section 423 of Title 42 pertains to disability insurance benefits, while Section 1382 pertains to SSI.

not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).[5]

The ALJ analyzes whether a claimant is disabled by using an established "five-step sequential evaluation process." See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, then at step two, the ALJ decides whether the claimant has a "severe" medical impairment or impairments, which means the impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, then the ALJ considers, third, whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. If so, then the claimant is considered disabled. If not, then the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is "the most [a claimant] can still do despite [her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then moves to step four and determines whether the claimant's RFC allows her to perform her past relevant work. If the claimant has the RFC to perform her past relevant work, then she is not disabled. If the claimant does not, then the ALJ decides, at step five, whether the claimant can do other work in light of her RFC, age, education, and work experience. If

---

[5] The regulations at 20 C.F.R. § 404 et seq. pertain to disability insurance, while the regulations at 20 C.F.R. § 416 et seq. pertain to SSI.

3

the claimant can, she is not considered disabled; otherwise, she is. "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden, at Step 5, of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(f), 404.1560(c)(2), 416.912(f), 416.960(c)(2).

### B. The Initial Rejection and the ALJ's Decision

In an October 16, 2014, written decision, the ALJ found that plaintiff was not disabled under the Social Security Act. He first concluded that plaintiff did meet the insured status requirements of the Social Security Act through March 1, 2017. See 42 U.S.C. §§ 416(i) & 423. Then, he structured his decision around the five-step sequential evaluation process. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. Next, at step two, he found that she has several severe impairments: depression and anxiety. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Nonetheless, he determined at step three that she does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before moving to step four, the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retains the mental capacity to perform simple, routine tasks, which require concentration for two hour time periods. The work must be in the lower 1/3 of the stress continuum, defined as no independent decision making required, with no more than occasional changes in the work routine.

R. at 15. After reviewing the medical evidence of record and treatment notes, he found

that "the claimant's allegations are exaggerated and inconsistent with the objective evidence." Id. at 18. Specifically, he cited claimant's ability to visit with family, shop, and drive short distances, go to church, and "maintain enough attention to watch TV and read," concluding that "[w]hile she can reasonably be expected to struggle with complex instructions and tasks involving excessive social contacts, there is little indication that she cannot meet the basic mental demands of most unskilled work." Id. At the fourth step, the ALJ concluded that plaintiff was unable to perform past relevant work that involved "semi-skilled [work]," id. at 38, given her RFC "because she only retains the mental capacity for unskilled work," id. at 19. However, based on the VE's testimony, he found that "[c]onsidering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. The VE testified that plaintiff could perform unskilled occupations such as a greenhouse worker, auto detailer, and housekeeping cleaner. Accordingly, the ALJ concluded that plaintiff was not disabled.

### C. The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's ("SSA") Appeals Council, which denied review on February 17, 2016. The ALJ's decision thus became the final decision of the Commissioner. Plaintiff now seeks reversal of the final determination under 42 U.S.C. §§ 405(g) & 1383(c)(3).

## II. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence includes "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). Questions of law are reviewed de novo. Seavey, 276 F.3d at 9.

## III.   Discussion

Plaintiff raises three arguments: (1) that the ALJ ignored the VE's testimony regarding an additional limitation; (2) that the ALJ objectively defined stress; and (3) that the ALJ erred in his RFC determination finding that plaintiff had no physical limitations.

### A.   Plaintiff's Challenge to the ALJ's Treatment of the VE's Testimony

Plaintiff first argues that the ALJ erred by ignoring the VE's testimony on cross-examination. Specifically, the plaintiff argues that the medical record supports a finding that plaintiff could only accept minor criticism from supervisors, and in response to plaintiff's attorney's question on cross-examination, the VE testified that an individual could not perform work if that individual could only accept minor criticism. Thus, plaintiff contests, the Commissioner has not met her burden of proof at Step 5 to show that plaintiff could perform work. Plaintiff puts the cart before the horse. Her argument

6

presumes that the VE's testimony regarding this additional limitation is relevant. "But in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Here, Dr. Shawn Channell, the doctor who performed plaintiff's psychological consultive exam, noted that plaintiff told her "she would have trouble accepting criticism at work." R. at 332. Ultimately, however, Dr. Channell concluded that plaintiff's "mental health systems would not significantly compromise her ability to make simple decisions or to interact in an appropriate manner with work associates over an extended period of time." R. at 335. She further concluded that plaintiff "may encounter difficulty tolerating stress common to a work environment and maintaining attendance and a schedule." Id. Two Disability Determination Services ("DDS") consultants opined that plaintiff is "[c]apable of attending for a two hour period, full work day and full work week. She can be distracted due to anxiety which may impact her ability to complete tasks." R. at 48, 74. They also opined that "she is capable of appropriate social interaction with the public and coworker. She can accept minor critique from supervisors." Id. at 49, 74.

The ALJ did not discuss these specific opinions of the DDS consultants, but noted that he considered their findings and found that "they are not inconsistent with the medical evidence as a whole, and [] accorded [them] evidentiary weight in determining the claimant's [RFC]," R. at 18. He accorded "great weight to the opinion of Dr. Ira H. Hymoff, PhD, the impartial medical expert who testified at the hearing, after reviewing claimant's medical record." Id. at 16. Dr. Hymoff opined that plaintiff's "impairments of

7

anxiety [] and depression cause no more than moderate limitations in her mental functioning," id. at 16, and that Dr. Channell's opinion is consistent with the ALJ's RFC determination. The ALJ adopted Dr. Hymoff's opinion, and did not include the additional limitation regarding acceptance of minor critique in his RFC analysis. Thus, he did not err by ignoring the VE's testimony. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) ("It is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [ALJ], not the courts.").

### B. Plaintiff's Challenge to the ALJ's Handling of the Stress Issue

Plaintiff next argues that the ALJ erred by objectively defining stress in his RFC. She contends that stress "must be assessed from the point of view of what is subjectively stressful to the individual." Docket # 16, at 6. In support, she primarily relies on Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986). In Lancellotta, the ALJ concluded that the claimant was capable of performing low-stress work. Id. at 285. However, the First Circuit held that the ALJ's findings were not supported by substantial evidence because he failed to make "findings on the nature of Lancellotta's stress, the circumstances that trigger it, or how those factors affect his ability to work." Id. at 285.

I find that the ALJ did not commit such error here. Contrary to plaintiff's argument, the ALJ did not "define stress in an objective way." Docket # 16, at 6. Instead, he based his definition of stress on claimant's subjective symptoms and the medical evidence of record. The ALJ defined the parameters of plaintiff's stress limitations and explained that plaintiff's limitations permitted her to perform simple,

8

routine tasks that do not require independent decision making and involve only occasional changes in the work routine. "Unlike the situation in Lancellotta, the ALJ provided the vocational expert with individualized limitations based on [his] review of the record." Pereira v. Berryhill, No. 16-11855-FDS, 2017 WL 3567515, at *12 (D. Mass. Aug. 17, 2017). That is all that is required under Lancellotta. See Poulin v. Colvin, No. 14-cv-30-JHR, 2015 WL 237326, at *3 (D. Me. Jan. 18, 2015) (citation omitted) (explaining that "the requirements of Lancellotta are met when an adjudicator evaluates . . . the abilities to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and deal with changes in a routine work setting").

    **C.    Plaintiff's Challenge to the ALJ's Assessment of Her Physical Limitations**

Lastly, plaintiff contends that the ALJ erred in his RFC assessment of plaintiff's physical limitations when he found that plaintiff had the RFC "to perform a full range of work at all exertional levels," R. at 15. She argues that it was an incorrect assessment based on the medical record. Specifically, she points to an MRI lumbar spine report from October 2012 that shows "defects at both L4-5 and at L5-S1." Docket # 16, at 7. She concedes that "these conditions were not necessarily independently serious enough to be disabling by themselves," but argues that "they are unquestionably medically determinable impairments that the ALJ was required to consider and factor into his RFC formulation." Id.

Substantial evidence supports the ALJ's finding that plaintiff had no physical limitations. Although the ALJ did not specifically address the 2012 MRI report, he did

"consider[] all of the medical evidence of record and treatment notes received during the development of the record," R. at 19, when determining plaintiff's RFC. See DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 188 (D. Mass. 2009) (while the ALJ "was required to consider all the evidence," he "was not obligated . . . to address directly every piece of evidence"). After reviewing plaintiff's entire medical record, the ALJ found that "[c]laimant [was] treated for some chest pain, at Henry Heywood Hospital, on 04/15/2013, but her mental status was within normal limits and her physical functioning was deemed normal, after several laboratory tests, did not show any cardiac abnormalities." R. at 17 (citing to Exhibit 3F, which are the medical records from Heywood Hospital and include the 2012 MRI report). In the 2012 MRI report on which plaintiff relies, the examining doctor ultimately notes "[n]o significant central or neuroforaminal stenosis or disc herniatione. L5-S1 shows a minimal central protrusion without significant mass effect." Id. at 301. Indeed, almost one year later, in March 2013, when she applied for SSDI and SSI, plaintiff did not allege any physical impairments. See id. at 185. She stated to Dr. Channell that "she is limited in her physical capacities due to lack of motivation," id. at 334. Further, in July 2013, Dr. Montgomery found that plaintiff was capable of "heavy/very heavy" work. Id. at 50. Under these facts, I cannot say that the ALJ's physical RFC finding was not based on substantial evidence.

IV.  **Conclusion**

Plaintiff's Motion to Reverse or Remand the Decision of Commissioner (Docket # 16) is DENIED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 17) is ALLOWED.

Judgment may be entered affirming the decision of the Commissioner.

| September 18, 2017 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |